FRANCESCHI ET AL., PLAINTIFFS AND APPELLEES, *v.* TRUJILLO & MERCADO, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in an Action to Annul a Foreclosure Proceeding and of Ejectment.

No. 1521.—Decided June 28, 1918.

BANKRUPTCY—ABANDONMENT OF PROCEEDING.—Under the Law of Civil Procedure which went into effect in Porto Rico in 1876, the Royal Decree of October 27, 1885, and article 1044 of the Code of Commerce of 1829, a bankruptcy proceeding can not be regarded as having been abandoned because of the fact that it was suspended, when such suspension was independent of the will of the parties, as in the present case.

ID.—IN CUSTODIA LEGIS—ACTS OF OWNERSHIP—RIGHTS OF SUCCESSORS.—When upon the adjudication in bankruptcy of a person, corporation, or mercantile firm the estate of the bankrupt was taken charge of by a reciver who, according to the Law of Civil Procedure of 1886, had to be named by the judge, as he was in the present case, pending the appointment of the trustee in bankruptcy at the first meeting of creditors, said estate was *in custodia legis* from the time it came into the possession of the custodian. This was the status of the Rufina plantation in this case until ten years later, when it was seized and sold to satisfy the amount due to the mortgagees of the bankrupts, who could not set up a claim to the property because they were

incapacitated to perform acts of ownership and because the property was in the custody of the court. Therefore the heirs or successors in interest of the bankrupts cannot do now what their predecessors in interest could not do then.

The facts are stated in the opinion.

*Mr. Antonio F. Castro* for the appellants.

*Messrs. José Tous Soto* and *Frank Antonsanti* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

In the year 1884 the partnership of Antonsanti & Franceschi, composed of Francisco Antonsanti and J. Angel Franceschi and doing business in the town of Guayanilla, mortgaged the Rufina plantation to Dionisio Torres Figueroa to secure the payment to him of $28,000 in the currency of that period, the last instalment falling due in 1888.

A year later the said partnership filed a petition in bankruptcy and on June 12, 1885, was adjudged a bankrupt by the Court of First Instance of Ponce, which ordered the judicial seizure of all the property, books, documents and papers of the bankrupt firm, appointing Félix Tristani receiver, and set a day for a meeting of the creditors, at which meeting, pursuant to the law, the trustees in bankruptcy should be appointed. The referee and receiver appointed assumed charge of their offices and the latter took possession of the property of the bankrupt firm, including the Rufina plantation.

In the year 1895 the heirs of Dionisio Torres Figueroa brought suit to recover the amount owed on the mortgage by Antonsanti & Franceschi and summoned the receiver in bankruptcy, Félix Tristani, who, as such receiver, was in possession of the property. In that suit the Rufina property was ordered to be sold to pay the said heirs, and was sold at public auction to Mario Mercado as attorney in fact of José Trujillo Pizá. Later, the firm of Trujillo & Mercado became the owners of the property, and it now belongs to the firm of Mario Mercado & Sons.

Twenty years later the heirs of the two partners who composed the bankrupt firm brought suit to recover the said property, together with the profits accruing from the time it was sold at public auction, amounting, as they allege, to some $400,000. They based their suit on the fact that the action which terminated in said sale was brought against the receiver in bankruptcy, Félix Tristani, who was not the lawful representative of the defendant firm. This action was disposed of by a judgment of the District Court of Ponce, which held that the suit brought by the heirs of Dionisio Torres Figueroa, the sale of the Rufina property, its record in the registry of property and all subsequent records made were null and void and ordered that the property be restored to the plaintiffs, but refused to adjudge that the profits ·accruing therefrom should be accounted for. The appeal now under consideration was taken by Mario Mercado & Sons from that judgment.

The first ground assigned by the appellants for the reversal of the judgment appealed from is that the lower court erred in holding that the plaintiffs had legal capacity to sue.

Although the appellants argue at length the proposition that inasmuch as the firm of Antonsanti & Franceschi had been adjudged bankrupt the partners were incapacitated to manage the affairs of the partnership and to perform acts of ownership, and that they never became and could not become capacitated, yet this is not the real issue in the case, for the plaintiffs neither allege nor claim that their parents were rehabilitated in the bankruptcy proceeding, but that the petition became ineffective through failure to prosecute the bankruptcy proceeding since 1888 and that therefore the incapacity of their parents was removed, for which reason they can sue for the Rufina property as the heirs. In opposition to these averments by the appellees the appellants contend:

(*a*) That it has not been proved that the bankruptcy pro-

ceeding was abandoned since November, 1888, or any other date prior to the institution of the foreclosure proceeding;

(*b*) That it has been shown that the bankruptcy proceeding was being prosecuted when the foreclosure proceeding was initiated;

(*c*) That a special order of abatement was necessary; that such order was never made by the court, and that it would have had to be made in the bankruptcy proceeding itself;

(*d*) That such order of abatement could not be made;

(*e*) That such abatement does not produce rehabilitation.

In order to dispose of these questions we must set forth some facts which were shown from the admissions and the evidence in this action.

For different reasons the meeting of creditors called by the court, at which the trustees in bankruptcy were to be appointed, was not held on any of the three occasions set therefor, the last meeting having been set for May 1, 1886. This being the state of facts and certain property belonging to the bankrupt estate having been sold to meet the expenses of the proceeding, the bankrupts moved to set aside such sales and on February 18, 1888, the court granted a hearing on the motion, with the understanding that when it had been disposed of a meeting of the bankrupts and the creditors should be convened in order to agree upon the procedure to be followed in the future: On January 1, 1886, a new law of procedure had gone into effect and the Royal Decree of October 27, 1885, required the courts to call a meeting of the parties for the purpose of adopting a unanimous agreement in case they desired that the cases pending should be governed by the new law. The motion to set aside the sales was overruled on March 3, 1888, but no day was set for the meeting of the parties. On February 20, 1886, acting on the motion of the bankrupts that a new day be set for the meet-

ing, the court decided that their motion should be disposed of when the parties appeared to elect the procedure to be followed.

By that time some of the personal property had been sold, as stated; the properties "Faro" and "Colombano" had been eliminated from the bankrupt estate by foreclosure proceedings in 1885, and the Rufina property, which was the only property remaining, was mortgaged. In point of fact the junior mortgagees and the general creditors could not collect their claims since all the real property had been taken from the estate, and this the plaintiffs acknowledge in the fourteenth count of the first complaint filed by them in this action.

No steps were taken in the bankruptcy proceeding subsequent to 1888 although the Rufina property continued in the possession of the receiver, Félix Tristani, until the year 1895, when it was attached and seized in the action brought by the heirs of Dionisio Torres.

The parties discuss at length the question of whether all of the record in the bankruptcy proceeding was produced at the trial, since the clerk of the court in which the record was filed testified that there was besides a mass of records which were not indexed, and that although they relate to criminal matters he could not swear that there were not some civil records among them. Also, regarding whether it is to be understood that by reason of the continuation of the property Rufina in the possession of the receiver in bankruptcy until 1895, the bankruptcy proceeding was being prosecuted when the foreclosure proceeding against the Rufina property was instituted. We are of the opinion, however, that the fundamental issues are not these, but whether, considering that the last act approved was in 1888, it can be concluded in this case that the petition in the bankruptcy proceeding became ineffective four years later, and, also, that for that reason the incapacity of the partners of the firm which was adjudged bankrupt disappeared.

According to article 410 of the Law of Civil Procedure which went into effect in 1886, all actions at first instance shall be extinguished if not prosecuted within four years, unless (article 411) due to *force majeure* or to any other cause independent of the will of the parties, and the clerk (article 412) should give notice in order that the proper order may be officially issued. If the records were in the clerk's office, as was the case with the bankruptcy proceeding, since it has not been shown that they were filed, a special order of abatement was necessary according to articles 412 and 419, which order had to be made in the same proceeding and not in another distinct action, because a rehearing might be requested (article 415), because it affected the parties to the same, and because it produced the effect of terminating the action. 2 Manresa, Commentaries on the Law of Civil Procedure, pp. 274–75; Judgments of the Supreme Court of Spain of April 3, 1903, 95 *Jur. Civ.* 572, and October 22, 1912, 125 *Jur. Civ.* 152.

But although the plaintiff-appellees may be right in their contention that the abatement of the bankruptcy proceeding could be declared in this action, to which the bankruptcy creditors are not parties, nevertheless such proceeding could not be held to be abandoned because the failure to prosecute was due to a cause independent of the will of the parties, inasmuch as the Royal Decree of October 27, 1885, charged the courts with the duty of citing the parties to appear to make their choice of procedure, and the court having jurisdiction of the bankruptcy proceeding never set a day therefor, this being the cause of the suspension of the proceeding as shown by the fact that the setting of another day for the meeting of creditors was refused until the said hearing had been held. Moreover, the judge having cognizance of said proceeding was required by article 1044 of the Code of Commerce of 1829, in force at the time, to order the seizure of the property, books, papers and documents, to name a re-

ceiver and trustee in bankruptcy and to set a day for the
meeting of creditors, when making the order of adjudication
of bankruptcy, which order the court made pursuant to the
provisions of article 1028, although the bankrupts asked for
a rehearing.   These formalities are of such a nature that,
being imposed upon the court by law, they do not cause the
extinction of the proceeding if the action were suspended.
Therefore, in a case of bankruptcy in which, like the present,
the first meeting of creditors, at which trustees were to be
appointed, was pending, the Supreme Court of Spain held
that according to the text and spirit of article 412 of the
Code of Civil Procedure ''the cause of the abandonment must
be chargeable to the negligence of the parties to the action,
for which reason, as also held by this court and alleged in
support of the appeal, the conditions in support of the ex-
tinction of the proceeding do not hold in regard to the gen-
eral property dependent upon the acts which have to be per-
formed officially by process of law in the collective interests
of the persons to whom the estate of inheritance, bankruptcy
or insolvency may belong, and it is therefore clear that in
a case of bankruptcy, the action being exclusively confided
to the court, although its exercise be not demanded by any
of the parties, as well as the adoption of adequate means
to secure the property of the bankrupt and to cite the cred-
itors until the trustees who are to represent the collectivity
are appointed at the first meeting held, there are no lawful
grounds for attributing the abandonment to those who are
entitled to await the citation, or, consequently, to hold that
the proceeding has been extinguished to their prejudice.''
96 *Jur. Civ.* 822.

The fact that the judge complied with the requirements
by calling the meeting on three occasions and that the law
only provides for two cases in which the meeting was not
held and makes no provision for a third or subsequent meet-
ing, is no answer to the foregoing; for since it is the aim

of the law that the meeting of creditors shall be held as soon as possible and the court having cognizance of the bankruptcy proceeding is charged with that duty, it is to be supposed that if for any reason the meeting should not be held the judge is required to set a new day therefor until it is held.

There is also discussion as to whether the extinction of the proceeding carries with it the rehabilitation of the bankrupts, but we need not consider that question here, since, as there was no extinction, it is not necessary to determine whether it produced rehabilitation.

By the adjudication of bankruptcy of Antonsanti & Franceschi their property was seized by the receiver named by the court for that purpose, as required by law, pending the appointment of the trustee in bankruptcy at the first meeting of creditors, and from the time of such seizure the property of the bankrupts was *in custodia legis* and was so considered by all, and the property Rufina so remained until ten years later when it was levied on and sold at public auction to pay the mortgagees. Moreover, Antonsanti & Franceschi could not recover that property because they were incapacitated to perform acts of ownership and because the property was in the custody of the court, and their heirs, as such, can not now claim what their predecessors in interest had no right to demand. The demurrer by the defendants that the plaintiffs had no legal capacity to sue should have been sustained.

In view of this conclusion we need not consider the other questions raised, and the judgment appealed from should be reversed on said ground.

*Reversed.*

Chief Justice Hernández and Justice Wolf concurred.
Justices del Toro and Hutchison dissented.